UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | ) | 3:19-CR-00152 (KAD) |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| GLADSTONE O. BENJAMIN, JR. | ) | December 9, 2019 |

**MEMORANDUM OF DECISION**
**RE: MOTION TO SUPPRESS (ECF NO. 32)**

Kari A. Dooley, United States District Judge:

By motion dated September 3, 2019, the Defendant seeks to suppress evidence seized pursuant to a search warrant executed at Apartment 317, 280 Collins Street, Hartford, Connecticut. The Defendant also seeks to suppress statements he purportedly made in a phone call to Keiara Elezya and a Hartford Police Detective at the time the search warrant was being executed as fruit of the illegal search. For the reasons set forth below, the motion is DENIED.

**The Search**

On April 23, 2019, Hartford Police officers executed a search warrant for premises described therein as 280 Collins Street, Apartment 317, Hartford, Connecticut. They seized controlled substances, various tools of the drug trafficking trade, multiple firearms and a significant amount of ammunition of various calibers. The search warrant at issue, was signed by a judge of the superior court upon application of Officer Larson and Detective Caron of the Hartford Police Department. The affidavit in support of the search warrant application will be detailed below.

**Discussion**

In seeking suppression of all evidence seized at his apartment, the Defendant raises three distinct issues. He first asserts that the warrant application did not set forth probable cause to

1

believe that the evidence sought would be located at the target location. He next asserts that the warrant application did not set forth probable cause that there would be firearms at the target location. Finally, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), the Defendant asserts that the affiants made several false statements and material omissions in the affidavit in support of the application for the search warrant. On this last issue, the Defendant seeks an evidentiary hearing.

**Standard of Review**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . ." U.S. CONST. amend. IV. "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Therefore, "[i]n determining whether probable cause exists to support the issuance of a warrant, a judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019) (internal quotation marks omitted). "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir.1983) (internal citations omitted).

A court reviewing an issuing judge's finding of probable cause "must accord considerable deference to the probable cause determination . . ." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007); *see also Gates*, 462 U.S. at 236 ("[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo*

review. A magistrate's determination of probable cause should be paid great deference by reviewing courts.") (internal quotation marks and citations omitted). The reviewing court's task "is simply to ensure that the totality of the circumstances afforded the [issuing judge] 'a substantial basis' for making the requisite probable cause determination." *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) (citing *Gates*, 462 U.S. at 238). Additionally, the issuing judge's "finding of probable cause is itself a substantial factor tending to uphold the validity of [a] warrant." *Travisano*, 724 F.2d at 345 (internal citations omitted). In the end, any doubts that remain "should be resolved in favor of upholding the warrant." *Id*.

**The target location**

The Defendant first claims that the warrant application lacked probable cause as to the target location, specifically Apartment 317, within 280 Collins Street, Hartford, Connecticut. According to the Affidavit, in April 2019, the Hartford Police received information from a registered confidential informant that an individual was selling marijuana from 280 Collins Street, Apartment 317, in Hartford, Connecticut. The confidential informant, in addition to being registered as such, had previously provided reliable and detailed information which had led to both arrests and convictions. Thereafter, the confidential informant, on two separate dates, arranged to purchase marijuana from the individual purportedly at the subject address known only to the informant as "Benjamin." Prior to each transaction, the informant contacted "Benjamin" by telephone to arrange the sale. On each occasion, the informant was surveilled entering 280 Collins Street, Hartford, Connecticut and then exiting a few minutes later. At the prearranged meeting point he produced his purchase, which appeared to be, and field tested positive for, marijuana. On each occasion, the informant advised the officers that he had proceeded to Apartment 317 and that the transaction had occurred inside Apartment 317.

The Defendant avers that the informant could have entered any of the many apartments within 280 Collins Street and that therefore the necessary nexus to Apartment 317 is simply lacking. The Court disagrees. The previously reliable and registered confidential informant identified "Benjamin's" apartment as being at 280 Collins Street, Hartford, Connecticut and further identified the apartment as 317. The informant advised that "Benjamin" was selling marijuana. His information with respect to the building, 280 Collins Street, was corroborated on two different dates when he engaged in the controlled purchases. The information regarding the sale/distribution was corroborated on two different dates when he successfully purchased marijuana inside 280 Collins Street. Although the informant was not surveilled entering Apartment 317, his statements that he did so, given this corroboration and his proven track record, provided probable cause for the target location. When a reliable and proven confidential informant provides information that is in significant measure verified or corroborated, a judge may rely upon other of his statements in finding probable cause. *See Adams v. Williams*, 407 U.S. 143, 147 (1972) (Police may rely on information provided by a confidential informant to establish probable cause where the information "carrie[s] enough indicia of reliability to justify the officer's [reliance]."); *United States v. Elmore*, 482 F.3d 172, 180 (2d Cir. 2007) (Information from an informant who is known to law enforcement requires less corroboration and may be relied upon in light of the historical reliability of the informant.).

**The Search for Firearms**

The Defendant next asserts that the warrant lacked probable cause to search for firearms and related items. The Defendant asserts that the only information as to the possible presence of firearms at the apartment was an "unattributed" statement that "'Benjamin' is in illegal possession of multiple firearms" and the stock opinion of the affiants that "[p]ersons involved in

4

criminal activities often keep and use weapons and other devices to protect and further their criminal enterprises … weapons and other devices include but are not limited to: body armor, firearms, ammunition, night vision, police scanners, gun boxes and surveillance equipment. These items are normally hidden upon the dealer, locked in their motor vehicles, hidden in their residence or secured in a location to avoid detection and apprehension by law enforcement agencies."[1]

Preliminarily, while not artfully worded, the statement that "Benjamin" is in possession of multiple firearms is not unattributed. The affidavit states that the informant advised the officers that "'Benjamin' is conducting street level sales of Marijuana … Furthermore, **that** 'Benjamin' is in illegal possession of multiple firearms." (emphasis added). The information that Benjamin had multiple firearms came from the same proven, reliable and registered confidential informant. However, the informant's basis for making the statement is not included and the information is not otherwise corroborated. And other than the addition of the affiants' opinion described above, the warrant application is silent on the issue of firearms.

The Government asserts that the description of drug sales, in addition to the statement by the previously reliable informant, in conjunction with the seasoned opinion of the affiants combine to establish probable cause. The Court is also mindful that a judge of the superior court made a finding of probable cause to search for firearms, a determination that is entitled to great deference by this Court. *See Travisano*, 724 F.2d at 345 ("[T]he magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of [a] warrant.") (internal citations omitted). Accordingly, the Court agrees with the Government, though it is by no means an obvious outcome.

---

[1] Some of this boilerplate language has no application to the warrant being sought here. For example, the warrant did not seek to search a motor vehicle or another "secured location."

5

Although the affiants' opinion referenced "criminal activity" which could encompass everything from cash structuring to RICO conspiracy, the affidavit itself reflected, quite specifically, drug transactions. And it is hardly a reach to recognize that marijuana sales, like other drugs, often involve the use of firearms. *See, e.g., United States v. Jarvis*, 237 F. App'x 636, 638–9 (2d Cir. 2007) (summary order) (finding officers had probable cause to believe firearms found during an authorized search for marijuana, among other items, "were connected to the drug trafficking . . ."); *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) (finding probable cause to believe guns would be found in marijuana trafficking defendant's car based on, among other reasons, an FBI agent's experiential testimony that "guns are tools of the narcotics trade, frequently carried by dealers, particularly when they engage in transactions involving drugs or money."). The combination of the previously reliable informant's averment that Benjamin had multiple firearms and the law enforcement officers' opinion, in this specific context (to include the issuance of a warrant by a superior court judge), was sufficient to allow a search for and seizure of firearms.[2]

**The *Franks* Claim**

Lastly, the Defendant asserts that the Affidavit contained several false statements and/or material omissions which misled the superior court judge who reviewed and signed the warrant. He seeks an evidentiary hearing for the purpose of exploring the nature and scope of the false statements and material omissions.

As set forth in *Franks v. Delaware*, a defendant may "challenge the veracity of a sworn statement used by police to procure a search warrant." 438 U.S. 154, 155 (1978). If, after a

---

[2] In light of these rulings, the court need not take up the applicability of the good faith exception to the warrant requirement, *see United States v. Leon*, 468 U.S. 897 (1984), or the question of whether the items were in "plain view" during the execution of the warrant. *See United States v. Gamble*, 388 F.3d 74, 76–77 (2d Cir. 2004).

hearing, "the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded . . ." *Id.* at 156.

Ordinarily, when a *Franks* motion is filed, the Court must convene a hearing on the motion if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, **and if the allegedly false statement is necessary to the finding of probable cause** . . ." *Id.* at 155–6 (emphasis added); *United States v. Thomas*, 788 F.3d 345, 349 n.6 (2d Cir. 2015). If the disputed information is not material or necessary to the ultimate finding of probable cause, however, a *Franks* hearing is unnecessary. *United States v. Osborne*, 739 F. App'x 11, 16–17 (2d Cir. 2018) (summary order) (affirming denial of *Franks* hearing concerning wiretap and search warrant applications where erroneous information "was neither material nor necessary to an ultimate finding of probable cause"); *United States v. Aguiar*, 737 F.3d 251, 263 (2d Cir. 2013) (same; pen register and trap and trace warrant).

A review of the purportedly false information or omissions relied upon by the Defendant reveals that they would not have misled the issuing judge and they do not impact the presence of probable cause in the affidavit.

The first false statement or inconsistency identified by the Defendant is the affiants' statement that the confidential informant provided his/her information "[a]pproximately seven days ago." The affidavit was signed on April 18, 2019 but the first controlled purchase occurred between April 8, 2019 and April 10, 2019[3], more than seven days before the affidavit was

---

[3] The Defendant also complains that the exact date of the transaction was omitted and only a two day date range was included. This is a common practice, accepted by the courts, because it is designed to protect the identity of the

7

signed. Even if the difference in dates (at most three days) is not accounted for by use of the word "approximately," *see, e.g., United States v. McGee*, 564 F.3d 136, 142 (2d Cir. 2009) ("[w]here an indictment charges an offense using the 'on or about' formulation to allege the date, the government is not required to prove that the crime occurred on exactly the date named, but only that it occurred on a date that is 'reasonably near' to the date stated."), the imprecise time frame, does not render the affidavit misleading or undermine the finding of probable cause. *See Velardi v. Walsh*, 40 F.3d 569, 576 (2d Cir. 1994) ("Warrants have been upheld despite 'technical errors,' such as an incorrect street address, when the possibility of actual error is eliminated by other information . . .").

The Defendant next asserts that the affiants' use of the term "narcotics" to describe the investigation was an intentional deception designed to secure permission to search for firearms, given the oft recognized connection between narcotics and firearms. Clearly, marijuana is not a narcotic and the affiants' use of the term was at best slipshod and at worst reckless. But even ascribing the most sinister of motives to the misuse of the word narcotic, the judge would not have been misled. It is very clear that the investigation, from the very beginning, was about the distribution of marijuana. The two purchases involved only marijuana. A judge of the superior court knows or is presumed to know that marijuana is not a narcotic. *See Walton v. Arizona*, 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002) ("Trial judges are presumed to know the law and to apply it in making their decisions."). And in

---

confidential informant. *See, e.g., Rivera v. United States*, 928 F.2d 592, 604–05 (2d Cir. 1991) (finding no issue with affidavit's failure to give specific dates—"[s]o long as law enforcement agents present adequate information to permit the magistrate to conclude that there is probable cause and do not suppress facts that would cast doubt on its existence, they may properly exclude information that would unduly risk revealing a confidential informant's identity and exposing him or her to harm.").

8

any event, as noted above, the distribution of marijuana is also, quite commonly, linked to firearms. *See, e.g., Jarvis*, 237 F. App'x at 638–9; *Gaskin*, 364 F.3d at 457.

Finally, the Defendant asserts that the telephone number identified in the affidavit as the number used to reach "Benjamin" was inaccurate. He relies upon a police report completed after the search which states that a different number was used to reach the Defendant, *and* that the number so used was the same one used to arrange the controlled purchases of marijuana. The Government has conceded the inaccuracy of the police report and has confirmed the accuracy of the affidavit.[4]

In sum, the errors and omissions relied upon were not, viewed in context, sufficiently inaccurate or compelling as to mislead the judge. And even if they might be so characterized, they were not necessary to a determination of probable cause. As discussed above, there was probable cause to search the premises in question, to include a search for firearms. None of the claimed inaccuracies or omissions impact these prior determinations.

Therefore, no evidentiary hearing is required and the Motion to Suppress is DENIED.

SO ORDERED, this 9th day of December 2019.

_/s/_____
Kari A. Dooley, U.S.D.J.

---

[4] The Defendant also asks this court to question the credibility of the affiants and convene a *Franks* hearing because of a "stark falsehood" which Detective Caron included in an affidavit in support of an arrest warrant for the Defendant. The "stark falsehood" pertained to events that unfolded during the execution of the search warrant. It did not relate to the investigation, the confidential informant or the events leading up to the search warrant and therefore sheds no light on the accuracy of the search warrant affidavit or whether the superior court judge was misled thereby.